IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Zion Rashaun Dukes,                        )
                                           )
                    Plaintiff,             )
                                           )      Civil Action No. 1:25-511-BHH
v.                                         )
                                           )      **ORDER**
Captain Naomi McFadden,                    )
Captain Richard Mack, Lieutenant           )
Taia Carter, and Lieutenant Latoya         )
Johnson,                                   )
                                           )
                    Defendants.            )
_____ )

This matter is before the Court upon Plaintiff Zion Rashaun Dukes' ("Plaintiff" or "Dukes") *pro se* complaint filed pursuant to 42 U.S.C. § 1983 against Defendants Captain Naomi McFadden ("McFadden"), Captain Richard Mack ("Mack"), Lieutenant Taia Carter ("Carter"), and Lieutenant Latoya Johnson ("Johnson") (collectively referred to as "Defendants"). (ECF No. 1.) In his complaint, Plaintiff asserts that Defendants, who are employees of the South Carolina Department of Corrections ("SCDC"), violated of his Eighth Amendment rights.[1]

On June 24, 2025, Defendants filed a motion for summary judgment. (ECF No. 45.) Also pending before the Court are Plaintiff's motions for inmate correspondence and for access to law library, as well as two motions to compel, and Defendants' motion to have their requests for admission deemed admitted. (*See* ECF Nos. 33, 34, 36, 37, and 42.) In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d), D.S.C., the matter was referred to a United States Magistrate Judge for preliminary review.

---

[1] As the Magistrate Judge noted, Plaintiff also brought a claim for violation of his Fourteenth Amendment rights, but he withdraw the claim in his briefing. (ECF No. 57 at 2, n.2 (citing ECF No. 52 at 12).)

On September 2, 2025, United States Magistrate Judge Shiva V. Hodges issued a Report and Recommendation ("Report"), outlining the issues and recommending that the Court grant Defendants' motion for summary judgment (ECF No. 45) and find as moot all remaining motions (ECF Nos. 33, 34, 36, 37, 42).  On September 2, 2025, Plaintiff filed the affidavit of Demetrius Spencer in support of his response in opposition to Defendants' motion for summary judgment, and on September 19, 2025, Plaintiff field objections to the Magistrate Judge's Report.  (ECF Nos. 59, 60.)

Now, for the reasons set forth herein, the Court sustains in part Plaintiff's objections, and the Court declines to adopt the Magistrate Judge's Report.

## STANDARDS OF REVIEW

### I.     Summary Judgment

A court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  All evidence should be viewed in the light most favorable to the non-moving party.  *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 24 (4th Cir. 1990).

"As the moving party, Defendants are required to identify those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any,' which they believe demonstrate the absence of genuine issues of material fact." *Perez v. Arnold Transp.*, No. 3:15-cv-3162-TLW, 2018 WL 2301850, at *3 (D.S.C. Feb. 12, 2018) (quoting *Celotex*, 477 U.S. at 323). "As the nonmoving party, Plaintiff[ ] must then produce specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 317). "Plaintiffs may not rest on mere allegations or denials; they must produce 'significant probative evidence tending to support the complaint.' " *Id.* (quoting *Anderson*, 477 U.S. at 248). In other words, "the nonmoving party must go beyond the facts alleged in the pleadings and instead rely upon affidavits, depositions, or other evidence to show a genuine issue for trial." *Crawford v. Newport News Indus. Corp.*, No. 4:14-cv-130, 2018 WL 4561671, at *2. (E.D. Va. Mar. 2, 2018) (citing *Celotex*, 477 U.S. at 317), adopted in part, 2018 WL 2943445 (E.D. Va. June 11, 2018), appeal dismissed sub nom. *Kershaw v. Newport News Indus. Corp.*, 2018 WL 8058614 (4th Cir. Oct. 25, 2018).

At the summary judgment stage, video evidence can discredit factual assertions if the video evidence "blatantly" contradicts a version of the facts told by someone, such that no reasonable jury could believe that person. *Simmons v. Whitaker,* 106 F.4 th 379, 385 (4th Cir. 2024)*; see also Scott v. Harris*, 550 U.S. 372, 378 (2007) "When a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.'" *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 4th Cir. 2011) (quoting *Scott*, 550 U.S. at 380) (second alteration in original).

## II.    The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court.    The

recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination only of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

## **DISCUSSION**

### I.      **The Magistrate Judge's Findings**

In her Report, after summarizing the evidence of record and outlining the law pertaining to Eleventh Amendment immunity, the Magistrate Judge found that Plaintiff was not entitled to monetary damages under 42 U.S.C. § 1983 against Defendants in their official capacities because Eleventh Amendment immunity extends to arms of the state, including states agencies and state officers acting in their official capacity. (*See* ECF No. 57 at 8-10.)

Next, the Magistrate Judge outlined the relevant law pertaining to Plaintiff's Eighth Amendment excessive force claim, as well as the law pertaining to the defense of qualified immunity. (ECF No. 57 at 10-12.) As the Magistrate Judge explained, a prisoner alleging an Eighth Amendment claim must show (1) that prison officials acted with a sufficiently

4

culpable state of mind (the subjective component) and (2) that the deprivation or the injury inflicted on the prisoner was sufficiently serious (the objective component).  (ECF No. 57 at 10 (quoting *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (other citation omitted)).

In her Report, the Magistrate Judge found that the parties generally agree about what occurred on the day in question, "except as to whether Plaintiff was hit on the back fo the head after he was placed on the back of the UTV to be transported for decontamination," and the Magistrate Judge explained that Plaintiff's "primary argument is his Eighth Amendment rights were violated when 'Mack subjected the plaintiff to cruel and unusual punishment by holding his left leg to cause pain intentionally and by striking the Plaintiff with closed fists to the head.'" (*Id.* at 12 (quoting ECF No. 52 at 5).)  The Magistrate Judge then noted, however, that Plaintiff's own evidence indicated that "(1) he refused to follow orders leading to a planned use of force, (2) he refused to follow orders leading to a second application of chemical munitions while in his cell, and (3) he physically struggled with Defendants while being escorted from his cell to outside."  (*Id.* at 12-13 (citing ECF No. 52-1 at 39).)  The Magistrate Judge further noted that the video evidence showed that Plaintiff was "kicking and yelling while being transported to being decontaminated."  (*Id.*)

As to Plaintiff's alleged injuries, the Magistrate Judge acknowledged the evidence showing that the back of Plaintiff's head was "tender to touch, no break in skin," and that Plaintiff "had one abrasion on his right shoulder, no bleeding noted."  (*Id.* at 13 (citations omitted).)

Ultimately, the Magistrate Judge concluded that "the record evidence indicates that the limited use of force performed on Plaintiff was to maintain discipline and in response

5

to Plaintiff's repeated refusals to follow orders and to Plaintiff being physically threatening." (*Id.* at 14.)  The Magistrate Judge also concluded that Plaintiff failed to offer evidence otherwise, including any evidence that the use of force was performed maliciously or for the purpose of causing harm.  (*Id.*)

In addition, the Magistrate Judge found, as to the more demanding subjective component of the applicable test, that the record lacked evidence to show that Defendants acted with wantonness in the infliction of pain or for some other impermissible motive. (*Id.* at 15.)  Specifically, the Magistrate Judge concluded that "the undisputed facts show that all use of force was in response to Plaintiff's failure to follow orders or to Plaintiff acting in a threatening manner."  (*Id.*)  As a result, the Magistrate Judge recommended that the Court find that Defendants did not violate Plaintiff's constitutional right and grant their motion for summary judgment as to Plaintiff's Eighth Amendment claims.  (*Id.* at 16.)

Lastly, the Magistrate Judge found that, absent an underlying constitutional violation, any of Plaintiff's claims grounded in supervisory liability also necessarily fail.  The Magistrate Judge determined that "Plaintiff has failed to submit relevant evidence concerning any supervisory liability claim, such as evidence demonstrating a pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability."  (*Id.* at 17.)  Accordingly, the Magistrate Judge also recommended that the Court grant summary judgment in favor of Defendants as to any of Plaintiff's claims grounded in supervisory liability.  (*Id.* at 18.)

## II.    Plaintiff's Objections to the Report

In his objections to the Report, Plaintiff sets forth the relevant factual background follows:

On June 24, 2023, Sergeant S. Jackson radioed in that the Plaintiff grabbed her jacket and would not release her. Jack[s]on pulled free of her jacket and Plaintiff pulled [the] jacket inside his cell.

Multiple officers responded including McFadden, Mack, Carter, Johnson, Ofc. C. Coplin, A. Williamson, D. McFadden, J. Lee. Where Plaintiff refused to give the jacket back, a planned use of force was conducted in which the Defendants say Johnson was recording. Defendant w[]ere making threats to the Plaintiff and the Plaintiff barricaded himself inside his cell and covered his face. McFadden gave Carter permission to administer one burst of "MK9" chemical munition. Plaintiff still refused and another burst was given of "MK9" chemical munition. Therefore the Plaintiff complied and walked without any problems until the Plaintiff was outside and the Defendants was [sic] trying to place the Plaintiff on the ground with no com[m]and or informing the Plaintiff. Whereas he became irate and in fear for his safety being his hands w[]ere behind his back and the Defendants were trying to forcefully place him on the ground where he could not break his fall. Defendant Mack and Carter then introduced Plaintiff to the ground by picking the Plaintiff up by the leg and getting him unbalanced and using their weight to slam him on the ground. Where Defendant Mack held his leg in a position to cause him pain and the Plaintiff informed him of this pain and was denied relief. A transport vehicle was brought and more restraints was [sic] placed on the Plaintiff and the transport was underway, Plaintiff to get relief tried to wipe his face with his legs then the camera was purposely covered where Defendant Mack struck the Plaintiff and the alleged kicking occurred and the use of Ofc. Coplin mace.

(ECF No. 60 at 2.) Next in his objections, Plaintiff outlines the relevant legal principles.

(*Id.* at 3-4.) Then on page five, Plaintiff begins to assert specific objections to the Report.

First, he objects to the Magistrate Judge's recitation of the facts and takes issue with her statement that "staff began to escort Plaintiff to medical wherein he became increasingly irate and combative." (ECF No. 60 at 5 (quoting ECF No. 57 at 3).) According to Plaintiff, he was not irate or combative and was following all directions given when officers were walking him to medical. (*Id.*) Plaintiff argues that Defendants began to place him on the ground with no directive given to him at any point, and he asserts that there was no reason for him to be placed on the ground to be restrained when he "walked outside with

7

no problem." (*Id.*)

Next, Plaintiff objects to the Magistrate Judge's statement that "Plaintiff was restrained on the ground for SCDC personnel to regain control of the situation." (*Id.* (quoting ECF No. 57 at 3).) Again, Plaintiff asserts that he was "clearly walking without a problem until SCDC staff failed to give him any directives on what he was to do or what instructions they wanted him to follow." (*Id.*)

Plaintiff also objects to the Magistrate Judge's statement that "while in the back of the UTV the Plaintiff became combative against SCDC staff and attempted to strike Carter." (*Id.* at 6 (quoting ECF No. 57 at 4).) According to Plaintiff, he "was in pain and was not attempting to strike anyone and could not see who was around him and was only trying to get relief from his facial area." (*Id.*) Plaintiff further objects to the Magistrate Judge's statement that Coplin administered a single burst of chemical munition to restore order. (*Id.* (citing ECF No. 57 at 4).) Plaintiff asserts instead that Defendants' affidavits are false in that regard, and that the evidence contradicts Defendants' statements as to when Coplin administered chemical munition, because it did not occur while Plaintiff was in the in back of the UTV. (*Id.*) Plaintiff also objects to footnote three on pages four and five of the Report. (ECF NO. 6 at 6.) Specifically, Plaintiff objects to the Magistrate Judge's statement that the video evidence is consistent with Defendants' evidence concerning what happened and is not consistent with Plaintiff's representation of what happened. According to Plaintiff, "[t]he Defendants' evidence is not accurate." (ECF NO. 6 at 7.) Plaintiff asserts that Defendants each give different versions of the facts; however, he also specifically notes that Defendants all assert that Plaintiff became combative while on the way to medical. Plaintiff also disputes Defendants' assertion that Plaintiff "fell" or "dropped to the

ground of his own will," as Plaintiff asserts that Mack picked his leg up off the ground and forced Plaintiff to fall.  (*Id.* at 7.)

Next, Plaintiff objects to the Magistrate Judge's statement that the video shows that Defendants repeatedly attempted to place Plaintiff on the ground to place additional restraints on him.  Instead, Plaintiff asserts that "in the video evidence Defendants never state the reasons to place Plaintiff on the ground and the Defendants never gave Plaintiff a verbal command to go to the ground."  (*Id.*)  Plaintiff objects that there was no mention by Defendants in their incident reports or affidavits that they were trying to get Plaintiff on the ground to place additional restraints on him.  (*Id.*)  According to Plaintiff, the Magistrate Judge was biased against him, and he asserts that there was no threat to quell because his hands were restrained and he was not kicking or trying to harm Defendants.  (*Id.* at 8.)

Plaintiff also objects to footnote four on page five of the Magistrate Judge's Report, again asserting that it is false that chemical munition was deployed when Plaintiff was in the back of the transport vehicle.  (*Id.* (citing ECF No. 57 at 5, n.4).)  According to Plaintiff, officers sprayed chemical munition into his room twice and then once when he was outside on the ground, but *not* when he was in the back of the vehicle as Defendants' affidavits all falsely state.  (*Id.*)

Next, Plaintiff objects to page ten of the Report, where the Magistrate Judge recommends that the Court grant Defendants' motion for summary judgment as to damages claims brought by Plaintiff against Defendants in their official capacities.  (*Id.*)  Importantlyly, however, Plaintiff simply asserts that he brings his claim against Defendants in their individual capacities (and thus presumably not in their official capacities).

Plaintiff next objects to the Magistrate Judge's statement on page twelve that the

parties generally agree about what happened on the day of the incident. (*Id.* at 9.) Instead,

Plaintiff asserts that he does *not* agree with Defendants as to what happened. Plaintiff

asserts:

> The Plaintiff assert[s] he was slammed on the concrete which caused him a[n] injury. The Plaintiff assert[s] Johnson was not the camera operator, that Ofc. Coplin sprayed him in his facial area while he was on the ground fully restrained not a threat to her or himself that it was done to cause him pain and done with evil motive, that Mack held his leg bent to cause him pain and [it] was done with evil motive, that Defendant never gave the Plaintiff any instructions to get on the ground to place additional restraints on him, and that the plaintiff was [not] attempting to strike Carter with his feet.

(*Id.*)

Plaintiff also objects to the Magistrate Judge's statement that his primary argument

is that he was subjected to cruel and unusual punishment when his left leg was held

intentionally to cause pain and when he was struck on the head with closed fists. (*Id.*

(citing ECF No. 57 at 12).) Plaintiff asserts:

> Plaintiff's claims of his Eighth Amendment rights being violated extends to more than Mack holding the Plaintiff's "left leg bent" to cause pain intentionally and by striking the Plaintiff with "closed firsts to the head." The Plaintiff was not given an[y] directives to go to the ground for additional restraints to be placed on him and Defendant grabbed his left leg off the ground and slammed him on the ground where an injury occurred. While on the ground hands restrained behind his back with Defendants holding both of his legs down, Mack holding his left leg bent to cause pain even after the Plaintiff informed him he was in pain, Ofc. Coplin sprays the Plaintiff in the facial area with chemical munition while he was fully restrain[ed] then said "that was a win, I was trying to hit him in the face." Then while on the UTV the camera was purposely covered to allow Mack to strike the Plaintiff with closed fist[s] to the head. All of these claims are in the Plaintiff's complaint . . . .

(*Id.*)

Next, Plaintiff objects to the Magistrate Judge's statement that Plaintiff "physically

struggled with Defendants while being escorted form his cell to outside." (*Id.* at 10.)

10

According to Plaintiff, the video shows that he complied when coming out of his cell, and "there was no struggle until the Plaintiff was outside and the Defendants tried to forcefully put him on the ground without giv[ing] him any orders or directives." (*Id.*)

Plaintiff also objects to the Magistrate Judge's statement that Plaintiff does not dispute the evidence concerning his injuries. (*Id.* (citing ECF No. 57 at 13).) Plaintiff asserts that the evidence shows that he was struck in the head, which is contrary to Defendants' assertion that no injury occurred. Plaintiff also objects that all of the medical evidence supports his claimed injuries. (*Id.* at 10-11.)

Next, Plaintiff objects to footnote five on page thirteen of the Magistrate Judge's Report, asserting that the Magistrate Judge's statement that "the video evidence shows Plaintiff yelling and attempting to kick someone" contradicts her prior statement in the factual background section that "Plaintiff became combative and attempted to Strike Carter." (*Id.* at 11 (citing ECF No. 57 at 4, 13).) Plaintiff again refers to the statement in his affidavit that he was not attempting to strike Carter, and Plaintiff asserts that the Magistrate Judge failed to view the facts in the light most favorable to Plaintiff.

Plaintiff also objects to the Magistrate Judge's finding that the evidence shows that Defendants' limited use of force on Plaintiff was to maintain discipline and response to Plaintiff's repeated refusal to follow orders and to Plaintiff being physically threatening." (*Id.* at 11 (citing ECF No. 57 at 14).) According to Plaintiff, there is no evidence to show what orders the Plaintiff repeatedly refused. Plaintiff states that because no orders were given to him, force could not have been used to respond to Plaintiff's repeated refusal to follow orders. (*Id.* at 12.)

Plaintiff also objects to the Magistrate Judge's statement that Plaintiff has not offered

evidence to show that Defendants' use of force was done maliciously or for the purpose of causing harm.  (*Id.*)  Plaintiff refers to his affidavit and repeats his argument that Defendants never gave Plaintiff any verbal orders for him to follow.

Plaintiff also asserts that the video "was covered to the extent where you could see nothing on purpose so the Defendant could strike Plaintiff in the head whereas the Plaintiff['s] hands were restrained behind his back[,] his ankles were restrained, and chemical munition was administered to his facial area to where he could not see."  (*Id.* at 12.)  According to Plaintiff, he was no threat to Defendants when he was struck by Defendant Mack while in the back of the transport vehicle.

Next, Plaintiff objects to the Magistrate Judge's finding that the actions of Defendants were necessary and in proportion to the threat he was posing.  (*Id.* at 13 (citing ECF No. 57 at 14).)  Plaintiff states, instead, that he was "subdued with hand restraints behind his back and ankle restraints on his feet and chemical munition applied to his facial area while laying on his back."  (*Id.*)  As such, Plaintiff asserts that he posed no threat to anyone such that he was struck maliciously and sadistically.

Plaintiff also objects to the Magistrate Judge's finding that the record is devoid of evidence showing that Defendants acted with wantonness.  (*Id.* at 14.)  Plaintiff points again to his affidavit and the video and states that record is not devoid of any indication that Defendants acted without wantonness in the infliction of pain.  And Plaintiff again objects to the Magistrate Judge's finding that the record shows that the use of force was in response to Plaintiff's failure to follow orders or to Plaintiff acting in a threatening manner. (*Id.*)  Plaintiff asserts that the Magistrate Judge changed the narrative in favor of Defendants, and he repeats his assertion that Defendants never gave him any orders that

12

he failed to follow.  (*Id.* at 14-15.)

Plaintiff also objects to the Magistrate Judge's statement in footnote seven that Plaintiff failed to show how Defendants' reports are inconsistent, and Plaintiff repeats his argument that Defendants gave false information in their affidavits.  (*Id.* at 15-17.) According to Plaintiff, he has pointed out significant differences in Defendants' accounts of the events in their reports and affidavits, and he asks the Court to find that Defendants made their affidavits in bad faith.  (*Id.* at 17-18.)

Plaintiff next objects to the Magistrate Judge's recommendation that the Court grant Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim, asserting that he has proven his claim in his affidavit, that Defendants' incident reports are vague, and that the video shows the cruel and unusual punishment that Plaintiff endured. (*Id.* at 18.)  Plaintiff again repeats his assertion that Defendants never gave him any orders that he failed to follow, and that Defendants' use of force was malicious and sadistic.

As to the Magistrate Judge's recommendation that the Court grant summary judgment in favor of Defendants on any supervisory liability claim, Plaintiff objects that the incident reports, affidavits, and video evidence support a supervisory liability claim against Defendant McFadden because she "was conducting the use of force and her inactions to stop the conduct that violated the Plaintiff's 8th Amend. Rights show deliberate indifference."  (*Id.* at 19.)  Plaintiff further objects to McFadden's "allowing Defendants to slam the Plaintiff without stopping it, her allowing Ofc. Coplin to made the Plaintiff while he was fully restrained and not a threat; her allowing Mack to bend the Plaintiff's leg to cause pain," as well as her "allowing Mack to strike the Plaintiff multiple times in the head and allowing the camera to be covered on purpose."  (*Id.*)  According to Plaintiff, he has

13

submitted relevant evidence to support a supervisory liability claim against McFadden, and he asserts that a genuine issue of material fact exists as to his claim. (*Id.* at 19-20.)

In addition, Plaintiff asserts that a genuine issue of material fact exists as to all of his claims, and he contends that the Magistrate Judge was biased toward Defendants and failed to view the evidence in the light most favorable to him. (*Id.* at 20.) Here again, Plaintiff repeats his argument that Defendants never gave him any orders that he did not follow, and he asserts that he was fully restrained and was not a threat at any time. (*Id.* at 21.) In conclusion, Plaintiff asks the Court to conclude that Defendants' affidavits were made in bad faith and to find that Plaintiff was never a threat and never failed to follow orders, and that, as a result, Defendants' use of force was done maliciously and sadistically. (*Id.* at 22.)

### III.    This Court's Review

Here, as outlined above, Plaintiff filed lengthy, detailed objections to the Magistrate Judge's Report, and the Court has carefully reviewed them. In addition, the Court has independently reviewed all of the evidence submitted in this case, including the relevant video footage, which the Court has watched numerous times.

After *de novo* review, the Court agrees with the Magistrate Judge that, despite Plaintiff's repeated assertions that he was not irate or combative and that he never failed to follow any directives given by Defendants, the evidence *initially* demonstrates otherwise. As a practical matter, Plaintiff himself admits that he grabbed Officer Jackson's jacket through the food service flap on his door and that he refused to return the jacket when officers asked him to do so multiple times. (ECF No. 26 at 2-3.) And as can be seen on the video footage, Plaintiff then barricaded the food flap with a mattress and acted

14

belligerently for several minutes.  Officers ultimately were able to handcuff Plaintiff after spraying chemical munitions into his room, and Plaintiff asserts that he thereafter "complied and walked without any problems until [he] was outside."

Although it appears from the video that Plaintiff walked with officers without any problems while he was *inside* the facility, the same cannot be said once he was walking *outside*.  Instead, the video shows that after taking a few steps outside, Plaintiff began resisting officers' efforts to walk and began accusing the officers of pushing him and acting "bad."  Plaintiff can be heard saying, "I'll sit down before I cooperate," to which an officer says, "Come on, now."  Plaintiff repeats, "I'll sit down before you do this," still resisting efforts to walk with the officers and appearing to crouch down and drop his weight to resist the officers' efforts.  Plaintiff then struggles with three officers for several seconds, at which point a fourth officer threatens to spray chemical munitions at Plaintiff.  Plaintiff then states, "I ain't going nowhere [unintelligible]," and leans down and again appears to drop his weight.  In response to Plaintiff's actions, an officer can be heard saying, "Put him down and get some belly chains," and to "put him face down in the grass."  Next, an officer can be heard asking another officer to "grab his legs," following which Plaintiff says, "Don't grab my legs.  I promise you."  Plaintiff then says, "Johnson, I'm telling you, I like you Johnson," at which point an officer can be heard saying, "Move, Dukes," and Plaintiff says "no."  The officer (presumably Johnson) then says, "come on, Dukes," and "we trying to get you out and you acting a fool."  At this point, officers have moved Dukes mostly off the concrete and onto the grass, and the Court finds that the evidence of record does not create a genuine dispute of material fact as to any alleged violation of Plaintiff's constitutional rights *up to this point* in the day's events.  As the Magistrate Judge properly noted: Plaintiff

refused to follow Defendants' orders while in his cell, leading to a planned use of force; Plaintiff again refused to follow Defendants' orders while in his cell, leading to a second burst of chemical munitions; and Plaintiff physically struggled with officers while walking outside for decontamination.  Thus, the Court finds no constitutional violation as a matter of law *up to the point in time when officers moved Plaintiff off the sidewalk and onto the grass.*

After this point in time, however, the Court agrees with Plaintiff that the parties' accounts as to what happened differ, and the Court finds that material factual disputes remain as to whether Defendants' subsequent actions violated Plaintiff's constitutional rights.  First, with respect to the video evidence, Defendant Mack can be seen lifting Plaintiff's left leg, following which Plaintiff appears to kick his left leg back and then hop on his right foot.  Viewing the video in the light most favorable to Plaintiff, it does appear that Defendant Mack forces Plaintiff to fall to the ground face-first, with Mack landing on top of him and another officer appearing to fall partially on Plaintiff as well.[2]

---

[2] The use of force report submitted by Defendants makes no mention of this fall other than to say that Plaintiff "became very irate and combative" when being transported to medical.  (ECF NO. 45-6 at 5.) Defendant Mack's incident report also does not mention the fall other than to say that he was responsible for the right leg (whereas the video shows him holding the left leg).  (ECF No. 45-7 at 1.)  Defendant Mack's affidavit, however, states that "Inmate Dukes continued disregard for directives and forced me to restrain him on the ground in order to regain control of the situation."  (ECF No. 45-10 at 1.)  Also, according to Defendant McFadden's incident report, Dukes became combative while being escorted to medical and "drop[ped] to the ground and started kicking toward Lt. Carter."  (ECF No. 45-8 at 2.)  And Defendant McFadden states in her affidavit that Dukes became combative while being walked to medical, "dropping to the ground and disregarding directives," and that he "was restrained on the ground so that order could be restored."  (ECF No. 45-9 at 2.)  Defendant Carter's and Defendant Johnson's affidavits state the same.  (ECF Nos. 45-11 at 1; 53-1 at 1-2.)

On the other hand, in his affidavit, Plaintiff states that Defendants Carter and Mack "body slammed" him to the ground.  (ECF No. 26 at 4; *see also* ECF No. 52-1 at 39 ("While I was on the grass Lt. Carter and Lt. Mack succeeded to slam me where I landed face and shoulder first into the concrete.").)  In addition, in the affidavit of Demetrius Spencer (submitted by Plaintiff), Spencer states that he witnessed the events from his window and that Plaintiff struggled with Mack, Johnson, and another officer and that all three "slammed" Plaintiff on the ground.  (ECF No. 59 at 2.)

Ultimately, the Court finds that it is for a jury to evaluate this evidence.

After landing on the ground, Plaintiff states, "I hit my face on this concrete," and although most of Plaintiff's body is on the grass, part of his right shoulder and his face appear to be on the concrete. Directly after Plaintiff lands on the ground (and at a point when he is already being fully restrained),[3] another officer leans down and sprays Plaintiff in the face with chemical munitions.[4] This same officer can be heard on the video later saying, "That was a win. I was trying to hit his ass in the face."[5]

When Plaintiff is on the ground restrained beneath Defendant Mack, he can be heard saying, "let go of my foot, man," and "my leg, man, y'all are gonna break my leg," to which Mack says, "alright then, stop moving, stop moving," and another officer yells at him to "stop moving" and "stop acting up." For more than a minute, Defendant Mack holds Plaintiff's leg bent at a sharp angle by his left side while sitting on top of him. Plaintiff asserts in his affidavit: "Lt. Mack held my left leg bent to where it caused me severe pain and I said get off my leg I feel like you['re] breaking it where he responded[,] stop trying to get up[,] *which I wasn't*[,] and Lt. Mack continued to hold my leg in the position to cause me pain." (ECF No. 52-1 at 39 (emphasis added).) Another officer then calls for some leg irons "because he's out here still resisting, and we got him on the ground." The same officer states that "he fell to the ground," and Plaintiff says, "I ain't fell, they slammed me."

---

[3] *See Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008).

[4] Plaintiff identifies the officer who sprayed him while he was on the ground as Officer Coplin, although the Court notes that Officer Coplin is not named as a Defendant in this action.

[5] In his objections, Plaintiff correctly points out that all of Defendants' affidavits state that Officer Coplin used a short burst of chemical munitions on Plaintiff when he was in the back of the vehicle, whereas the video shows that this occurred prior to him being placed in the vehicle. (*See* ECF Nos. 45-9 at 2; 45-10 at 2; 45-11 at 2; 53-1 at 1.) Importantly (and contrary to Defendants' evidence), Plaintiff does not allege that he was sprayed with chemical munitions while in the back of the vehicle. Instead, as addressed in more detail above, Plaintiff alleges that Mack struck him with a closed fist while he was in the back of the vehicle.

The officers state that he isn't going to walk and that they need the leg irons.  After review, the Court finds that it is appropriate for a jury, and not the Court, to weigh this evidence.

In the next video clip, after securing the leg irons on Plaintiff, officers can be seen lifting Plaintiff into the back of the vehicle, and they can be heard stating that he has a hair clip (a black bobby pin) in his mouth.  Four officers walk alongside the back of the vehicle for a little over a minute without any issues while Plaintiff is lying on his back in the rear.  Officers then try to rearrange Plaintiff at one point, and he can be seen trying to wipe his eyes on his knees.  Plaintiff then leans to the side, at which point the vehicle stops and an officer can be heard telling him to put his hands back behind his back.  Officers then try to manipulate his hands back behind his back, causing Plaintiff to end up sideways in the back of the vehicle.  Plaintiff then begins yelling and kicking, at which point a finger or a hand blocks the video for 25 seconds.  While the video is blocked, which Plaintiff alleges was done on purpose to conceal Defendants' actions, Plaintiff and officers can be heard yelling.  Specifically, one officer can be heard yelling, "'Cause you not about to do that to me," and telling him to "calm down" and "but you kicking me," to which Plaintiff yells, "ma'am, my eyes are on fire!"  Because the video is completely blocked, what happened during these 25 seconds cannot be seen.

In his affidavit, Plaintiff alleges that while he was in the back of the vehicle being transported to medical, he "tried to lift my legs to my face to wipe my eyes Defendant Mack turned me sideways to place my hands behind my back then Lt. Mack struck me with a closed fist to my head."  (ECF No. 52-1.)  On the other hand, the incident reports and affidavits of Defendants do not mention any officer striking Plaintiff with a closed fist while he was in the back of the vehicle; rather, Defendants' reports and affidavits state that

18

Officer Coplin sprayed chemical munitions at Plaintiff while he was in the back of the vehicle, which is contrary to what the video shows and what Plaintiff alleges. *See supra* note 5. Here again, the Court finds that it is appropriate for a jury to evaluate this evidence.

Therefore, after a careful review of the evidence in the light most favorable to Plaintiff, the Court disagrees with the Magistrate Judge that "few facts in this case are disputed." (ECF No. 57 at 18, n. 8.) Instead, the Court finds that Plaintiff's objections correctly identify several disputed material facts both as to what occurred after officers moved Plaintiff to the grass outside and as to the extent of force used, and further, the Court finds that these disputed facts are particularly relevant to Defendants' subjective states of mind.[6] Furthermore, the Court finds that the Magistrate Judge impermissibly resolved these factual disputes in finding that Defendants are entitled to judgment as a matter of law. Instead, in light of the disputed material facts outlined herein, the Court finds that it is for a jury to weigh the relevant evidence and determine whether Defendants violated Plaintiff's Eighth Amendment rights after they moved Plaintiff to the grass.[7] Accordingly, the Court declines to adopt the Magistrate Judge's Report at this time, and the Court denies Defendants' motion for summary judgment (ECF No. 45).

---

[6] As the Magistrate Judge noted, Plaintiff must show that Defendants acted with a "sufficiently culpable state of mind" – the subjective component of an excessive force claim. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). And the state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). "Put differently, the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Iko*, 535 F.3d at 239 (quoting *Hudson v. McMillian*, 503 U.S. 1 7 (1992). The following, non-exclusive factors are relevant when determining whether an officer acted with wantonness: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (internal quotations omitted)).

[7] Because material facts are in dispute, the Court also cannot decide at this time whether Defendants are entitled to qualified immunity.

## CONCLUSION

Based on the foregoing, the Court sustains in part Plaintiff's objections (ECF No. 60), and the Court respectfully declines to adopt the Magistrate Judge's Report (ECF No. 57). Instead, because the Court finds that the record contains disputed, material facts for a jury to evaluate, the Court denies Defendants' motion for summary judgment (ECF No. 45).[8] Additionally, at this time the Court denies Defendant's motion to have their requests for admission deemed admitted (ECF No. 36); and the Court denies Plaintiff's motion for inmate correspondence, for access to a law library, and to compel (ECF Nos. 33, 34, 37, and 42).[9]

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

March 27, 2026
Charleston, South Carolina

---

[8] The Court notes that based on Eleventh Amendment immunity, Defendants would be entitled to summary judgment on any claims asserted against them in their official capacities; however, Plaintiff has indicated that his claims are only against Defendants in their individual capacities.

[9] Lastly, the Court notes that it may refer this matter to another Magistrate Judge for mediation prior to setting it for trial.